IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **PATRICK JUSTI,**<br><br>            **Plaintiff,**<br><br>v.<br><br>**LT. R. DAVIS,**<br>**LT. J. BRUCE,**<br>**LT. F. MADISON,**<br>**JOHN/JANE DOE 1,**<br>**JOHN/JANE DOE 2, and**<br>**JOHN/JANE DOE 3,**<br><br>            **Defendants.** | Case No. 25-cv-01345-SPM |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Patrick Justi filed this case pro se pursuant to 42 U.S.C. § 1983 alleging constitutional violations that occurred while he was an inmate in the Illinois Department of Corrections. Along with his Complaint, Plaintiff filed a Motion for Leave to Proceed *in forma pauperis* (IFP), which is now before the Court. (Doc. 2).

Under 28 U.S.C. § 1915, an indigent party may commence a federal court action without paying required costs and fees upon submission of an affidavit asserting the inability "to pay such fees or give security therefor" and stating, "the nature of the action, defense or appeal and the affiant's belief that the person is entitled to redress." 28 U.S.C. § 1915(a)(1). The Court is satisfied from the affidavit submitted by Plaintiff that he is indigent. (Doc. 2). But the Court's inquiry does not end there because 28 U.S.C. § 1915(e)(2) requires careful threshold scrutiny of a complaint filed by a plaintiff seeking to proceed IFP.

The Court may dismiss a case and deny an otherwise qualified plaintiff leave to proceed

IFP, if the action is clearly frivolous or malicious, fails to state a claim, or is a claim for money damages against an immune defendant. 28 U.S.C. § 1915(e)(2)(B); *see also Hoskins v. Poelstra*, 320 F.3d 761, 763 (7th Cir. 2003). The test for determining if an action is frivolous or without merit is whether the plaintiff can make a rational argument on the law or facts in support of the claim. *Neitzke v. Williams,* 490 U.S. 319, 325 (1989); *Corgain v. Miller*, 708 F.2d 1241, 1247 (7th Cir. 1983). An action fails to state a claim if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When assessing a motion to proceed IFP, a district court should inquire into the merits of the plaintiff's claims, and if the court finds that the case lacks merit under the criteria listed in § 1915(e)(2)(B), it should deny leave to proceed IFP. *Lucien v. Roegner*, 682 F.2d 625, 626 (7th Cir. 1982).

### THE COMPLAINT

Plaintiff alleges the following: While housed at Big Muddy River Correctional Center, on July 9, 2023, Plaintiff informed Lieutenants Davis, Bruce, and Madison that he was being sexually harassed by his cellmate, Jamer Jimmerson. (Doc. 1, p. 9). Specifically, early in the morning, Plaintiff told Davis that he feared for his "physical and sexual safety" if he remained housed with Jimmerson because Jimmerson was compulsively masturbating in the cell. Davis responded that there was nothing he could do because it was 4:30 a.m. Later that day, during lunch "chow line," Plaintiff spoke to Bruce and Madison about his fears. Bruce and Madison instructed Plaintiff to ask the house sergeant to call "placement to request a cell change." (*Id.*).

Following lunch, Plaintiff spoke with the house sergeant, Sergeant Winters, about the situation with his cellmate, and he informed Winters that he feared for his safety. (Doc. 1, p. 9-10). Plaintiff relayed the instructions he was given by Bruce and Madison about seeking a cell

change. (*Id.* at p. 9). Sergeant Winters responded, "I don't give a shit. Go lock up!" (*Id.*). In order to protect himself, Plaintiff then "refused housing." (*Id.* at p. 10). Sergeant Winters called the zone lieutenant, who was Madison. Madison came and informed Plaintiff that Plaintiff would be moved to a different cell the following day. Plaintiff again iterated his fears for his physical and sexual safety. Another inmate, named Harrison, who was nearby then spoke to Madison. Plaintiff believes that Harrison confirmed Plaintiff's assertions about his cellmate. Madison then said that waiting to move Plaintiff to a new cell the following days "was not good enough," and Plaintiff was taken to restrictive housing. (*Id.*).

On July 10, 2023, Plaintiff received a false disciplinary report written by Madison. (Doc. 1, p. 10, 12). Plaintiff had a hearing on the disciplinary report before the Adjustment Committee on July 13, 2023. (*Id*. at p. 10). Plaintiff was found guilty of "disobeying a direct order essential to safety and security" and sanctioned with seven days in segregation. (*Id.* at p. 11). On July 16, 2023, Plaintiff was released from the restrictive housing unit and returned to his previous housing wing. Plaintiff was housed in a cell by himself. (*Id.*).

Plaintiff still feared for his safety from his old cellmate, Jimmerson, so he spoke to the internal affairs unit. (Doc. 1, p. 12). Internal affairs imposed a "keep separate from" Jimmerson order but covered up Plaintiff's valid PREA complaint and did not investigate Plaintiff's allegations of sexual harassment. Plaintiff was transferred to Graham Correctional Center on August 9, 2023. (*Id.*).

On December 27, 2023, Plaintiff received a letter from the Administrative Review Board (ARB) stating that the charge of "disobeying a direct order essential to safety and security" was not substantiated and would be modified to "disobeying a direct order." (Doc. 1, p. 12). The letter also stated that the seven days in restrictive housing "should be deleted." The ARB did not address

that Plaintiff had lost his "Culinary Arts Earn Good Conduct Contract" because he had been found guilty of disobeying a direct order essential to safety and security. Plaintiff states that he would have maintained the contract had he originally been charged and found guilty of simply disobeying a direct order. (*Id.*).

**PRELIMINARY DISMISSALS**

Plaintiff lists two sets of John/Jane Doe Defendants. (Doc. 1, p. 3). These sets are identified on the docket as "John/Jane Doe 2" and "John/Jane Doe 3." John/Jane Doe 2 is described as "IDOC Adjustment Committee Hearing Officers and all other lieutenants and IDOC officials/officers on 7/13/23 at Big Muddy River Correctional Center." (*Id.*). The other group, John/Jane Doe 3, is described as "IDOC intelligence officers at the Big Muddy River Correctional Center on July 17, 2023 (1st shift)." (*Id.* at p. 4). While a plaintiff may use the "John/Jane Doe" designation to refer to specific individuals whose names are unknown, a plaintiff runs afoul of the pleading standards in *Iqbal* and *Twombly* by merely asserting that a group of defendants violated his constitutional rights. See *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (finding the phrase "one or more of the Defendants" did not adequately connect specific defendants to illegal acts, and thus failed to adequately plead personal involvement). A plaintiff must make plausible factual allegations against individuals. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (finding that a complaint must describe "more than a sheer possibility that a defendant has acted unlawfully"); *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Here, Plaintiff does not describe the conduct of individuals in these two groups; nor does he indicate how many individuals are in each group or identify particular misconduct by any specific person that allegedly violated his constitutional rights. Because the Complaint does not sufficiently describe the unknown defendants nor their conduct, both sets of John/Janes Does will be dismissed

without prejudice.

The Court also dismisses any claims brought against John/Jane Doe 1 described as "IDOC shift commander on 7/9/23." (Doc. 1, p. 3). There are no allegations associated with this individual in the Complaint, and merely listing John/Jane Doe 1 as a defendant is not sufficient to state a claim. *See Collins v. Kibort,* 143 F.3d 331, 334 (7th Cir. 1998). Accordingly, John/Jane Doe 1 is dismissed.

### DISCUSSION

Based on Plaintiff's allegations and his articulation of his claims, the Court designates the following counts:

**Count 1:** First Amendment claim against Madison for retaliating against Plaintiff by placing him in restrictive housing and issuing him a false disciplinary report for submitting a PREA related complaint.

**Count 2:** Fourteenth Amendment due process claim against Madison for issuing Plaintiff a false disciplinary report that resulted in the cancellation of his earned good time contract and modification of good time credits.

**Count 3:** Fourteenth Amendment equal protection claim against Davis, Bruce, and Madison.

**Count 4:** Claim against Davis, Bruce, and Madison for violating state law and the Prison Rape Elimination Act (PREA).

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[1] pleading standard.**

### Count 1

To succeed on a First Amendment retaliation claim, Plaintiff must show "that (1) he

---

[1] *Twombly,* 550 U.S. at 570.

engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (quoting *Massey v. Johnson,* 457 F.3d 711, 716 (7th Cir. 2006)).

Plaintiff asserts that when he complained that his cellmate was sexually harassing him and that he was feeling unsafe, Madison had him placed in restrictive housing and issued him a fabricated disciplinary ticket. (Doc. 1, p. 8, 10). These allegations are sufficient for Count 1 to proceed against Madison.

**Count 2**

"The Due Process Clause of the Fourteenth Amendment applies only to deprivations of life, liberty, and property." *Isby v. Brown*, 856 F.3d 508, 524 (7th Cir. 2017). When an inmate raises a procedural due process claim based on false charges and related to disciplinary proceedings, the Court undertakes a two-part analysis. *Id.* The Court first evaluates whether the prisoner was deprived of a protected liberty interest, and then second, evaluates whether the process he was afforded was constitutionally deficient. *Id.* (citing *Hess v. Bd. of Trs. of S. Ill. Univ.*, 839 F.3d 668, 673 (7th Cir. 2016)).

"Prisoners generally have a cognizable liberty interest in earned credit-time and other benefits that decrease their sentence length, so the threatened loss of good time credits triggers a cognizable liberty interest." *Torres v. Brookman,* 155 F. 4th 952, 956 (7th Cir. 2025) (internal citations omitted). A plaintiff is precluded, however, from bringing claims for damages if a judgment in favor of the plaintiff would "necessarily imply the invalidity of his punishment imposed." *Edwards v. Balisok,* 520 U.S. 641, 648 (1997). *See also Heck v. Humphrey,* 512 U.S.

477, 480-81 (1994); *McAtee v. Cowan*, 250 F.3d 506, 508 (7th Cir. 2001); *Morgan v. Schott,* 914 F. 3d 1115, 1120 (7th Cir. 2019). This means that a plaintiff cannot bring a civil rights action for the reduction of his good time credits that occurred as a result of a faulty disciplinary hearing until after the disciplinary proceeding is overturned.

Plaintiff's factual allegations surrounding his due process claim are not entirely clear. First, the Court cannot determine whether Plaintiff is claiming that as a result of the disciplinary report and subsequent finding of guilt good time credits already earned were revoked or that he lost the opportunity to earn good time credits because he could no longer participate in the culinary arts program. Second, the Court is also unable to discern the extent of the ARB's decision modifying Plaintiff's disciplinary charge and whether Plaintiff's claim would be barred by *Heck v. Humphrey.*

Regardless of these deficiencies, assuming that Plaintiff has a liberty interest in his good time credits and that his claim is not barred by *Heck,* he has still failed to plead facts establishing that the process afforded to him was constitutionally deficient. Adequate procedural due process "affecting the length of [a] carceral sentence, like a reduction in good-time credits" requires (1) advanced written notice of the charge against him; (2) the right to appear before an impartial hearing panel; (3) the right to call witnesses and present documentary evidence if prison safety allows; and (4) a written statement of the reasons for the discipline imposed. *Ealy v. Watson,* 109 F. 4th 958, 965 (7th Cir. 2024); *Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974). In addition, the disciplinary decision must be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994). Other than stating that he went before the Adjustment Committee on July 13, 2023, and informed them that he feared for his safety and that he believed he was being treated differently than other inmates, (Doc. 1, p. 10-11), Plaintiff does not challenge any aspect of the disciplinary hearing process itself. Because he does not assert that he was denied procedural protections

necessary for a constitutional disciplinary hearing, he has failed to state a due process claim under the Fourteenth Amendment. Count 2 is dismissed.

### Count 3

Plaintiff states in the Complaint that he was "treated differently than similarly situated individuals in custody" at Big Muddy River Correctional Center. (Doc. 1, p. 8, 11). Based on this assertion, the Court construes the Complaint as alleging a "class-of-one" equal protection claim. To state a class-of-one equal protection claim, an individual must allege that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiff does not assert any facts from which the Court can plausibly infer that he was intentionally treated differently by Defendants Davis, Bruce, or Madison. Plaintiff cannot rely on bald or conclusory assertions to establish a claim for discrimination, and so, Count 3 is dismissed. *See Ashcroft*, 556 U.S. at 681 (citing *Twombly*, 550 U.S. at 554-55).

### Count 4

Plaintiff asserts that IDOC officials and staff had a "policy, practice, or custom of ignoring PREA claims and violating state and federal PREA standards by treating PREA victims as assailants." (Doc. 1, p. 8).

To the extent Plaintiff is claiming that Defendants Davis, Bruce, and Madison violated state law and the Prisoner Rape Elimination Act (PREA) by their conduct, this claim is dismissed. Plaintiff does not cite to any specific state law that he believes Defendants violated and violations of state law do not amount to a constitutional violation. *See Wozniak v. Adesida*, 932 F.3d 1008, 1011 (7th Cir. 2019) ("[A] constitutional suit is not a way to enforce state law through the back door."); *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (observing that "42 U.S.C. § 1983

protects plaintiffs from constitutional violations, not violations of state laws or…departmental regulations"). Furthermore, PREA "does not give prisoners a personal right to sue for an official's failure to comply with the Act's requirements." See *Summers v. Waggoner*, No. 19-cv-01338-SMY, 2020 WL 6321488, at *3 (S.D. Ill. Oct. 28, 2020) (collecting cases). Because Plaintiff does not have a cause of action under state law or PREA, Count 4 is dismissed.

Although Counts 2, 3, and 4 are dismissed under 28 U.S.C. §1915(e)(2)(B), because Plaintiff has established his indigency and because Count 1 against Madison survives review, his Motion to Proceed *in forma pauperis* is **GRANTED.** (Doc. 2).

### MOTION FOR RECRUITMENT OF COUNSEL

Plaintiff has filed a Motion for Recruitment of Counsel (Doc. 3), which is **DENIED**.[2] In an attempt to find his own attorney Plaintiff states that he has contacted five lawyers with no success. He has included with his motion letters from two law firms declining to take his case. Accordingly, he has made reasonable efforts to retain counsel on his own prior to seeking assistance from the Court.

With respect to his ability to pursue this action pro se, Plaintiff states that he is in need of a lawyer because he does not believe that he can navigate the complex discovery process. This case is in the very early stages, however, and the discovery process has not commenced. *See Kadamovas v. Steven,* 706 F.3d 843, 845 (7th Cir. 2013) ("[U]ntil the defendants respond to the complaint, the plaintiff's need for assistance of counsel... cannot be gauged."). Plaintiff has some college education and has demonstrated an ability to clearly communicate with the Court and follow directions. Accordingly, the Court finds that Plaintiff can represent himself, at least for now.

---

[2] In evaluating the Motion for Recruitment of Counsel, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) and related authority.

**DISPOSITION**

For the reasons stated above, the Motion for Leave to Proceed *in forma pauperis* (Doc. 2) is **GRANTED**. Pursuant to Section 1915(e), **COUNT 1** will proceed against Madison and **COUNTS 2, 3,** and **4** are **DISMISSED without prejudice**. Because there are no surviving claims against Davis, Bruce, John/Jane Doe 1, John/Jane Doe 2, and John/Jane Doe 3, the Clerk of Court shall terminate them as parties on the docket.

The Clerk of Court **SHALL** prepare for Defendant Madison the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to the defendant's place of employment. If the defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If the defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

The defendant is **ORDERED** to file an appropriate responsive pleading to the Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, the defendant only needs to respond to the issues stated**

in this Merit Review Order.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change in address occurs. Failure to comply with this Order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:   January 6, 2026**

*s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.